IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW D. COE, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO.: 3:10-cv-311-GPM-DGW |
| | ) |
| OFFICER SLOAN, C/O HOMOYA, C. | ) |
| FENTON, and WEXFORD HEALTH | ) |
| SOURCES, INC., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATIONS

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections ("IDOC") prior to filing this lawsuit. It is **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies as to Defendants Homoya, Fenton, and Wexford Health Sources ("Wexford"). It is also **RECOMMENDED** that the following motions be **GRANTED**: Defendant Homoya's Motion for Summary Judgment (Doc. 36); Defendant Fenton's oral motion for summary judgment; Defendant Wexford's Motion to Dismiss (Doc. 53); and Defendant Wexford's Motion for Summary Judgment (Doc. 71). It is **FURTHER RECOMMENDED** that Plaintiff's Motion to Amend the Complaint be **DENIED**. It is **FINALLY RECOMMENDED** that Defendants Homoya, Fenton, and Wexford Health Sources be **DISMISSED** from the action.

# FINDINGS OF FACT

Plaintiff Andrew D. Coe filed his complaint on April 23, 2010, alleging that Defendants, IDOC officials, violated his constitutional rights by moving him into a "non-physically-challenged cell." Plaintiff Coe alleged that he is a physically-challenged inmate for whom IDOC physicians have granted low-deck, low-bunk, and physically-challenged cell permits. Plaintiff complained to Defendant Homoya about his cell placement, but Homoya told him there was nothing he could do, other than move Plaintiff into segregation. A few hours after the housing change, Plaintiff tripped over the bed rail in the non-physically-challenged cell, fell, and hit his head, causing injury to his neck and back. Plaintiff was kept overnight in the healthcare unit and released the next day with a soft neck brace and pain medication. Dr. Obadina ordered that he be placed into a physically-challenged cell, but Defendant Sloan placed him back into the same cell. Plaintiff further alleged that Defendant Homoya denied medical treatment, showers, and "lay-in" trays during the recovery period for his injuries, in violation of his constitutional rights and the Americans with Disabilities Act ("ADA") (Doc. 1).

On threshold review, the Court allowed Plaintiff to proceed on his Eighth Amendment deliberate indifference claims against Defendants Obadina, Burns, Sloan, and Homoya (Doc. 8). Plaintiff filed an amended complaint on March 25, 2011 (Doc. 32), adding three defendants, C. Fenton, F. Barge, and Wexford Health. On April 4, 2011, the Court dismissed Defendants Burns and Obadina with prejudice pursuant to Fed. R. Civ. P. 41(b) because they had not been served summons within the deadlines imposed by Fed. R. Civ. P. 4(m). The Court dismissed Defendant F. Barge on June 27, 2011, on the same basis (Doc. 57).

*Pending Motions*

Now pending before the Court are a motion for summary judgment filed by Defendant Homoya on March 11, 2011, arguing Plaintiff failed to exhaust administrative remedies prior to

filing suit (Doc. 36);[1] a motion to dismiss filed by Defendant Wexford Health Sources on May 10, 2011, arguing it is not liable under a theory of *respondeat superior* for the actions of its employee; a motion for summary judgment filed by Defendant Wexford Health Sources on August 2, 2011, arguing Plaintiff failed to exhaust administrative remedies prior to filing suit (Doc. 71); and a motion for leave to file an amended complaint filed by Plaintiff on September 2, 2011 (Doc. 80).[2]

*Plaintiff's Exhibits*

As an attachment to his original complaint, Plaintiff filed with the Court a grievance hand-dated August 31, 2009 (Doc. 1-2, Exh. A). In the grievance, Plaintiff explained that he fell in his cell and sustained a head and neck injury. He received medical treatment from Dr. Obadina who ordered that Plaintiff be placed in a "physically challenged" cell. Upon his return from the healthcare unit on August 30, 2009, Officer Solange (Sloan), however, returned him to the same cell in which he sustained his injury, and not to a "physically challenged" cell, as Dr. Obadina had ordered. Plaintiff requested placement in an ADA-compliant cell. Plaintiff marked the grievance as an emergency. The grievance contained a notation that on September 4, 2009, the Chief Administrative Officer determined that Plaintiff's grievance was not an emergency. A counselor responded to the grievance on September 9, 2009, stating: "Offender is designated as Physically Challenged. Offender's request for an ADA cell is at the discretion of the Physician and the Administration."

On October 15, 2009, Grievance Officer K. Deen denied the grievance (Doc. 1-2, Exh. B). The Grievance Officer's report stated: "Per C. Fenton HCUA 'he is not in a wheelchair; ADA cells are for those in wheelchairs.' Placement officer does not make decision on which

---

[1] At the *Pavey* hearing held August 4, 2011, Defendant Fenton orally moved for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 82, p. 3).
[2] The Court notes that Defendant Sloan did not raise the affirmative defense that Plaintiff failed to exhaust administrative remedies prior to filing suit. Accordingly, it will be recommended that Plaintiff may proceed on the merits of his claims against Defendant Sloan.

inmates are placed in ADA cell. HCU makes this decision." The Chief Administrative Officer concurred in the denial of the grievance on October 21, 2009. Plaintiff appealed the denial of the grievance to the Administrative Review Board ("ARB"). In a letter dated December 8, 2009, the ARB denied the grievance (Doc. 1-2, Exh. C).

In response to Defendant Homoya's Motion for Summary Judgment, Plaintiff produced another grievance dated October 14, 2009 (Doc. 47, pp. 15-16). In that grievance, Plaintiff complained that Defendant Homoya refused to provide him with "lay in meals" and showers. The grievance did not contain a counselor's response, and it was not received- or date-stamped. Plaintiff provided no evidence demonstrating the grievance was reviewed by a grievance officer or by the ARB on appeal.

### *Defendants' Exhibits*

Attached to Defendant Homoya's Motion for Summary Judgment is the affidavit of Jackie Miller, Chairperson of the ARB. Miller attested that the files of the ARB did not contain any grievances filed against Officer Homoya regarding housing placement. She stated that the only grievance in the ARB files related to Plaintiff's housing placement was the August 31, 2009, grievance denied by the ARB, in which Plaintiff complained about Officer Sloan placing him an a non-compliant cell (Doc. 27-1, Exh. A).

### *Pavey Hearing*

The undersigned held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), on August 4, 2011, to determine whether Plaintiff properly exhausted his administrative remedies before filing suit.

Defendants Homoya and Fenton argued that Plaintiff exhausted only one grievance regarding his cell placement. In that grievance, dated August 31, 2009, Plaintiff did not name or describe either Defendant Homoya or Fenton. Defendants Homoya and Fenton pointed out that

the grievance attached to the Plaintiff's response to the motion for summary judgment contained no date stamp, and no counselor's response. Defendants Homoya and Fenton argued, therefore, that the October 14 grievance attached as a response to the motion for summary judgment was not properly exhausted as required by the Department of Corrections (Doc. 82, pp. 5-8). As such, Plaintiff's claims against Defendants Homoya and Fenton were not fully exhausted prior to his filing suit against them.

Defendant Wexford argued that the August 31, 2009, grievance did not name or describe Wexford, nor did it make reference to Dr. Obadina's employer or the company for whom Dr. Obadina worked. The grievance stated that Dr. Obadina gave Plaintiff a permit for placement in a "physically challenged" cell, but Officer Sloan refused to abide by Dr. Obadina's order. Wexford argues that on the face of the grievance, Plaintiff received from Dr. Obadina what he asked for. Wexford further argued that even if Plaintiff sufficiently named Dr. Obadina in the grievance, there is no corporate liability under section 1983. Thus, Wexford Health should be dismissed.

Plaintiff conceded he did not mention Homoya in the August 31 grievance because Homoya's denial of showers and lay-in trays did not occur until after August 31, 2009. Regarding the October 14 grievance's absence of markings that would authenticate the document, Plaintiff stated that the grievance he filed with his response to the motion for summary judgment was a hand copy he made at the time he submitted the grievance. He did not know what happened to the original grievance after he put it in the institutional mail. At the hearing, Plaintiff indicated for the first time that he had submitted a similar grievance against Defendant Fenton on October 21, 2009, but that he had not yet filed it with the Court. He stated his copy of that grievance was also a hand copy. He did not know what happened to the original

grievance after he placed it in the mail. He claimed he never received a response to either grievance.

In rebuttal, defense counsel pointed out that in his original complaint, Plaintiff referenced and attached only the August 31 grievance. Defendant Homoya was a defendant in the original complaint, but Plaintiff did not mention any grievances filed against Homoya. Plaintiff argued that he did not identify the October 14 or October 21 grievances because he believed reference to the August 31 grievance was sufficient to answer the question posed. He further argued that Defendant Fenton was not named as a defendant until he filed his amended complaint.

### CONCLUSIONS OF LAW

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the

statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally. If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. ILL. ADMIN. CODE TIT. 20, § 504.810. The grievance officer is required to advise the Chief Administrative Officer ("CAO") at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. ILL. ADMIN. CODE TIT. 20, § 504.830. An inmate may appeal the decision of the CAO in writing within 30 days. ILL. ADMIN. CODE TIT. 20, § 504.850. *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006).

Under Illinois regulations, a grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." The Code goes on to state, however, that "this provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." ILL. ADMIN. CODE TIT. 20, § 504.810(b) (2003). The Supreme Court has held that exhaustion is not inadequate under the PLRA merely because "an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). The Court emphasized that the level of detail necessary in a grievance for adequate exhaustion should be determined by prison regulations, but that the PLRA does not impose a specific requirement regarding who must be named in a grievance for proper exhaustion. *Id.* at 218-19. The Court opined that notice to an individual that he might be sued "has not been thought to be one of the leading purposes of the exhaustion requirement," and cited the Fifth

Circuit's statement that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

*Defendant Sloan*

All parties conceded that Plaintiff fully exhausted the August 31, 2009, grievance in which he named Defendant Sloan and Dr. Obadina. Dr. Obadina was dismissed from the action. Thus, the Court recommends that Plaintiff exhausted his administrative remedies as to Defendant Sloan and may proceed against him in this lawsuit on the merits of the claim that Defendant Sloan violated Plaintiff's constitutional rights by failing to place him in a "physically challenged" cell as ordered by Dr. Obadina.

*Defendant Homoya*

The evidence before the Court fails to demonstrate that Plaintiff fully exhausted a grievance naming or describing Defendant Homoya. Plaintiff did not name Defendant Homoya in the fully-exhausted August 31 grievance. Plaintiff claimed to have submitted a grievance to prison officials on October 14, 2009, complaining that Defendant Homoya refused to provide him with showers or "lay-in" trays. Plaintiff testified that the grievance filed with the Court was copied by hand at the same time as the grievance he submitted to prison officials. Thus, it contained no authenticating marks (such as a "received" or date stamp), nor did it contain a counselor's response. Plaintiff did not provide the Court with a grievance officer's report, or an indication that he appealed any grievance regarding Defendant Homoya to the ARB. Jackie Miller averred in an affidavit that the ARB's file did not contain any grievances regarding Defendant Homoya and the denial of showers or lay-in trays. In the original complaint when asked about grievances he had filed, Plaintiff referenced only the August 31 grievance. At the hearing, the Court asked Plaintiff why he did not mention the October 14 grievance in his

8

original complaint filed in April 2010. Plaintiff responded that he believed reference to the facts involved in filing the August 31 grievance was sufficient to answer the question posed in the form complaint. When asked about the circumstances surrounding the filing of the October 14 grievance, Plaintiff indicated that he placed it in the institutional mail. After that, he received no institutional response. He maintained that he was not responsible for the grievance after he submitted it through the institutional mail.

Based on this evidence, the Court recommends a finding that Defendants met their burden of demonstrating that Plaintiff did not exhaust his administrative remedies against Defendant Homoya. Defendant demonstrates that no grievances regarding Defendant Homoya and denial of showers or lay-in trays were filed with the ARB. Plaintiff produced no evidence, other than his own statement, that he filed the October 14, 2009, grievance. Plaintiff's failure to exhaust is further supported by his own complaint, which described only the August 31 grievance. The Court finds not credible Plaintiff's assertion that he did all he could to exhaust the grievance about Defendant Homoya filed on October 14, 2009. Plaintiff did not submit to the Court any evidence authenticating or corroborating the submission of that grievance. Moreover, Plaintiff did not submit his hand-copied grievance regarding Defendant Homoya to the Court until he responded to the Motion for Summary Judgment filed by Defendant Homoya. For these reasons, it is recommended that Plaintiff did not exhaust his administrative remedies as to Defendant Homoya prior to filing suit. Accordingly, it is recommended that Defendant Homoya's Motion for Summary Judgment be **GRANTED**, and he be dismissed from the action.

*Defendant Fenton*

Plaintiff did not name Defendant Fenton in his original complaint. He named her as a defendant in the amended complaint filed March 25, 2011. Plaintiff did not mention that he filed a grievance against Defendant Fenton until the August 4, 2011, *Pavey* hearing. Even then, he did

not produce a document to support his statement that he filed a grievance against her. He stated that he had a copy of the grievance "back in [his] cell." Not only is there no documentary evidence before the Court of a grievance filed against Defendant Fenton, but Plaintiff attached to the amended complaint only the grievance officer's report regarding the August 31 grievance. Plaintiff informed the Court at the *Pavey* Hearing that he submitted a grievance against Defendant Fenton on October 21, 2009, but he received no response. With no evidentiary support or other corroborating evidence of the existence of an October 21 grievance, the Court believes Plaintiff's statements were not credible.

Based on this evidence, the Court recommends a finding that Plaintiff did not exhaust his administrative remedies as to Defendant Fenton prior to filing suit. As such, Defendant Fenton's oral motion for summary judgment should be **GRANTED** and Defendant Fenton **DISMISSED** with prejudice from the action.

*Defendant Wexford Health Sources*

Wexford seeks judgment in its favor on two theories: first, that Plaintiff did not exhaust administrative remedies against it prior to filing suit; and second, that it is not liable for the acts of its former employee, Dr. Obadina, because there is no *respondeat superior* liability in section 1983 actions.

The Court recommends that Plaintiff did not fully exhaust administrative remedies against Wexford. Wexford was neither identified, nor described in any fully-exhausted grievance submitted by Plaintiff to prison officials. Plaintiff, indeed, did not even argue that he submitted a grievance naming or describing Wexford.

Plaintiff did argue, however, in opposition to Wexford's Motion to Dismiss (Doc. 53), that Wexford should be held liable for the actions of its former employee Dr. Obadina. This assertion merits a lengthier discussion.

On a defendant's motion to dismiss, all facts in the complaint are accepted as true. *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008). A complaint by a *pro se* plaintiff is construed more liberally than one prepared by counsel. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a cognizable claim, the complaint must provide enough detail to give defendants fair notice of the nature of the claim and the grounds upon which it rests and to show that relief is plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007). A mere recitation of the elements of the cause of action is insufficient. *Id.* The pleading must contain *factual allegations* that "raise the right to relief above the speculative level." *Id.* at 555 (emphasis added).

A private corporation acting under the color of state law is treated as a municipal entity for purposes of § 1983. *Jackson v. Illinoi Medi-Car, Inc.*, 300 F.3d 760, 766 n. 6 (7th Cir. 2002). Municipalities cannot be liable under section 1983 on a *respondeat superior* theory, but can be liable if an official policy or custom causes a constitutional violation. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978); *Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir. 1994). Likewise, a corporation may be liable under § 1983 if an official policy or custom resulted in the alleged constitutional deprivation. *Monell*, 436 U.S. at 690-91; *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). There must be, however, a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996). "[B]oilerplate allegations" about a municipal policy that are "entirely lacking in any factual support" are insufficient. *Sivard*, 17 F.3d at 188 (quoting *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 202 (7th Cir. 1985)). A claim that a corporation provided inadequate training may

serve as basis for § 1983 liability only where the failure to train amounts to deliberate indifference to an individual's constitutional rights. *See Harris,* 488 U.S. at 388.

In response to Wexford's Motion to Dismiss, Plaintiff argued that Wexford should be held liable for Dr. Obadina's actions because Dr. Obadina was under investigation by Wexford for "deliberate indifference, negligence, and incompetence." As a result, Wexford should have known of a pattern of Dr. Obadina's misconduct in providing medical treatment to inmates (Doc. 56).

After the *Pavey* hearing, Plaintiff filed a motion for leave to file an amended complaint. Plaintiff seeks to add claims against Wexford Health regarding liability for the actions of Dr. Obadina.[3] Plaintiff stated that Wexford's "deficient policies, inadequate staffing, inadequate training and oversight for medical employees, [and] lack of policies and procedures manual" caused him to experience "pain and suffering, physical injuries, [and] emotional and mental distress" in violation of the Eighth Amendment.

Plaintiff's arguments are insufficient to overcome Wexford's Motion to Dismiss for two reasons. First, Plaintiff makes only sweeping generalizations about Wexford's policies and procedures, without providing any supporting factual allegations that "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff alleges in the motion to amend that Wexford issued vague and contradictory policies, tolerated the "practice of understaffing," and provided inadequate training. These problems, he maintained, proximately caused him to be deprived of his rights guaranteed by the Eighth Amendment. Plaintiff did not point to any specific policy, procedure, practice, regulation, rule, or requirement promulgated by Wexford

---

[3] Plaintiff did not submit a proposed amended complaint with his motion for leave to amend. It appears, however, that he intends the motion for leave itself to be considered the amended complaint. The Court further notes that the claims in the motion are intended to refute Wexford's arguments that it is not liable for the actions of Dr. Obadina, as raised by Motion to Dismiss (Doc. 53) and argued at the *Pavey* hearing. Thus, the motion is more appropriately characterized as a response to Wexford's Motion to Dismiss, than a true motion for leave to amend the complaint.

that is directly linked to a constitutional violation. *See Harris*, 489 U.S. at 385. His allegations were vague and unsupported.

Second, the facts describing the actions of Dr. Obadina do not rise to the level of "deliberate indifference" violative of the constitution. Plaintiff stated that he received immediate medical attention after his fall. Dr. Obadina ordered x-rays and provided a neck brace and pain medication. Furthermore, upon his release from the health care unit, Dr. Obadina ordered that Plaintiff be placed into a physically challenged cell (Doc. 1). The fully-exhausted August 31 grievance alleges the same facts. As for the legal basis of his claims, Plaintiff stated Dr. Obadina violated his constitutional rights because "he was aware of my medical condition from my medical records. Dr. Obadina failed to enforce the order that he gave that I be housed into a physically challenged cell and wing."

"[D]eliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the Plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that

13

a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

As alleged by Plaintiff, Dr. Obadina responded reasonably to any risk of harm by ordering that Plaintiff be placed in a physically-challenged cell. Though Plaintiff was not ultimately placed in such a cell, Dr. Obadina is "free from liability" because he acted reasonably to prevent harm to Plaintiff. Thus, on the face of the complaint it appears that Plaintiff has not made allegations against Dr. Obadina that would sufficiently state a claim of deliberate indifference to his serious medical needs. A finding that Dr. Obadina did not act with deliberate indifference renders Wexford's liability irrelevant.

Accordingly, the undersigned recommends that both the motion to dismiss and the motion for summary judgment filed by Wexford Health Sources should be **GRANTED** and Defendant Wexford Health Sources **DISMISSED** from the action. Plaintiff's motion to amend the complaint should be **DENIED**.

## Conclusion

Based on all the foregoing, it is hereby **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies, and that the Court adopt the foregoing findings of fact and conclusions of law. It is also **RECOMMENDED** that the following motions be **GRANTED**: Defendant Homoya's Motion for Summary Judgment (Doc. 36); Defendant Fenton's oral motion for summary judgment; Defendant Wexford's Motion to Dismiss (Doc. 53); and Defendant Wexford's Motion for Summary Judgment (Doc. 71). It is **FURTHER RECOMMENDED** that Plaintiff's Motion to Amend the Complaint (Doc. 80) be **DENIED**. It is **FINALLY RECOMMENDED** that Defendants Homoya, Fenton, and Wexford

Health Sources be **DISMISSED** from the action, but that Plaintiff be allowed to proceed against Defendant Sloan on the merits.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have fourteen (14) days after the service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: October 11, 2011**

**DONALD G. WILKERSON**
**United States Magistrate Judge**